## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **COLLEGIANS FOR A CONSTRUCTIVE TOMORROW-MADISON**, an unincorporated expressive student organization at the University of Wisconsin-Madison; and **WILLIAM MERRICK**, a student at the University of Wisconsin-Madison,<br><br>                              Plaintiffs,<br><br>    v.<br><br>The Regents of the University of Wisconsin System **CHARLES PRUITT**, **JEFFREY BARTELL**, **MARK J. BRADLEY**, **EILEEN CONNOLLY-KEESLER**, **JUDITH V. CRAIN**, **DANAE DAVIS**, **STAN DAVIS**, **JOHN DREW**, **TONY EVERS**, **MICHAEL J. FALBO**, **THOMAS LOFTUS**, **BRENT SMITH**, **MICHAEL J. SPECTOR**, **JOSÉ F. VÁSQUEZ**, **DAVID G. WALSH**, and **BETTY WOMACK,** each in their individual and official capacities; **KEVIN P. REILLY**, individually and in his official capacity as President of the University of Wisconsin System; **CAROLYN "BIDDY" MARTIN**, individually and in her official capacity as Chancellor of the University of Wisconsin-Madison; **ASSOCIATED STUDENTS OF MADISON**, the student government at the University of Wisconsin-Madison; and **CARL FERGUS**, **JOSEPH FRENCH**, **KURT GOSSELIN**, **KYLE SZARZYNSKI**, **BRANDON WILLIAMS**, **MICHAEL ROMENESKO**, **MATTHEW MANES**, **ASHLEIGH MICHAEL**, **TIM FUNG**, **KHAMSENG YANG**, **EUGENE DREYSTER**, **APRIL KIGEYA**, **JAKE BUROW**, and **STUDENT SERVICES FINANCE COMMITTEE MEMBERS 1-5**, each in their official capacities as members of the Associated Students of Madison Student Services Finance Committee at the University of Wisconsin-Madison,<br><br>                          Defendants. | Case No. 09-cv-514<br><br>**VERIFIED COMPLAINT** |

## VERIFIED COMPLAINT

Plaintiffs Collegians for a Constructive Tomorrow, Madison Chapter (CFACT) and William Merrick, by and through counsel, and for their Complaint against Charles Pruitt, Jeffrey Bartell, Mark J. Bradley, Eileen Connolly-Keesler, Judith V. Crain, Danae Davis, Stan Davis, John Drew, Tony Evers, Michael J. Falbo, Thomas Loftus, Brent Smith, Michael J. Spector, José F. Vásquez, David G. Walsh, and Betty Womack, members of the University of Wisconsin System Board of Regents; Kevin P. Reilly, President of the University of Wisconsin System; Carolyn "Biddy" Martin, Chancellor of the University of Wisconsin-Madison; the Associated Students of Madison, the student government at the University of Wisconsin-Madison, Carl Fergus, Joseph French, Kurt Gosselin, Kyle Szarzynski, Brandon Williams, Michael Romenesko, Matthew Manes, Ashleigh Michael, Tim Fung, Khamseng Yang, Eugene Dreyster, April Kigeya, Jake Burow, and Student Services Finance Committee members 1 through 5, all current or former members of the Associated Students of Madison Student Services Finance Committee at the University of Wisconsin-Madison, hereby state as follows:

## INTRODUCTION

1.      The University of Wisconsin System (UW System) requires each student to pay a student activity fee, called a "segregated university fee," which is used, in part, to fund student organizations on the various campuses.  At the University of Wisconsin-Madison (UW-Madison), recognized student organizations (RSOs) can apply for eligibility to receive a year-long budget through the General Student Services Fund (GSSF), which is funded by segregated university fees. RSOs use GSSF funding to engage in a wide variety of political, cultural, social, and religious expression.  GSSF budgets are distributed by the Student Services Finance Committee (SSFC), which is a committee of the Associated Students of Madison (ASM), subject to the approval of the

2

UW-Madison Chancellor and UW System Board of Regents.  ASM and UW-Madison enact and enforce bylaws specifying the criteria RSOs must meet in order to be deemed eligible for a GSSF budget.  These bylaws require, in part, that RSOs provide a "direct service" to the UW-Madison campus.  The bylaws, however, are vague, and give SSFC members unbridled discretion in apportioning segregated fees, which results in illegal viewpoint discrimination.

2.      CFACT is an RSO at UW-Madison and, in the fall of 2008, applied for GSSF eligibility for the 2009-2010 academic year.  CFACT has applied for and received GSSF eligibility for the past six years.  Its application outlined the various direct services it provides to UW-Madison students, including issue advocacy campaigns that use free market principles to advocate for changes in consumer and environmental policy on campus.  In evaluating CFACT's application, SSFC found that the campaigns were not a "direct service," and denied CFACT eligibility.  However, SSFC granted eligibility to the Wisconsin Public Interest Research Group (WISPIRG), an RSO that, like CFACT, offers issue advocacy campaigns as its direct service to students.  The only difference is that WISPIRG's issue advocacy campaigns use politically liberal principles to advocate for changes in consumer and environmental policy.  At least one SSFC member admitted that he discriminated against CFACT's eligibility application because he disagreed with its viewpoint.

3.      By treating CFACT differently than other similarly situated student organizations, by denying CFACT eligibility to receive segregated fee funding for its activities, which are virtually identical to those of another funded RSO with a different viewpoint, and by explicitly voting against CFACT's eligibility because of the viewpoint it expresses on campus, Defendants violated CFACT's constitutional rights and caused irreparable injury to Plaintiffs.  Despite

CFACT's appeals to the Student Judiciary and the UW-Madison Chancellor, SSFC's viewpoint discriminatory decision was not corrected.

4.     This action is premised on the United States Constitution concerning the denial of Plaintiffs' fundamental rights to free speech, equal protection and due process. The aforementioned policies and actions are challenged on their face and as applied to Plaintiffs. Defendants' policies and actions have deprived and will continue to deprive Plaintiffs of their paramount rights and guarantees under the United States Constitution. Each and every act of Defendants alleged herein was committed by Defendants, each and every one of them, under the color of state law and authority.

## JURISDICTION AND VENUE

5.     This civil rights action raises federal questions under the United States Constitution, particularly the First and Fourteenth Amendments, and the Civil Rights Act of 1871, 42 U.S.C. § 1983.

6.     This Court has original jurisdiction over these federal claims pursuant to 28 U.S.C. §§ 1331 and 1343. This Court has authority to award the requested damages pursuant to 28 U.S.C. § 1343; the requested declaratory relief pursuant to 28 U.S.C. § 2201–02; the requested injunctive relief pursuant to 28 U.S.C. § 1343 and Fed. R. Civ. P. 65; and costs and attorneys fees under 42 U.S.C. § 1988.

7.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the Defendants reside in this district and/or all of the acts described in this Complaint occurred in this district.

## PLAINTIFFS

8.      Plaintiff CFACT has been a RSO at UW-Madison since 2002.

9.      Plaintiff William Merrick is a student at UW-Madison and is a campaign coordinator of CFACT.

## DEFENDANTS

10.     Defendant Charles Pruitt is the President of the University of Wisconsin System Board of Regents, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

11.     Defendant Jeffrey Bartell is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

12.     Defendant Mark J. Bradley is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

13.     Defendant Eileen Connolly-Keesler is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents

administration and policy-making, including the policies and procedures contained herein.  She is sued both in her individual and official capacities.

14.     Defendant Judith V. Crain is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.  She is sued both in her individual and official capacities.

15.     Defendant Danae Davis is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.  She is sued both in her individual and official capacities.

16.     Defendant Stan Davis is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

17.     Defendant John Drew is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for overseeing the Board of Regents administration and policy-making, including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

18.    Defendant Tony Evers is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

19.    Defendant Michael J. Falbo is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

20.    Defendant Thomas Loftus is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

21.    Defendant Brent Smith is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

22.    Defendant Michael J. Spector is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-

making, including the policies and procedures contained herein.   He is sued both in his individual and official capacities.

23.     Defendant José F. Vásquez is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.   He is sued both in his individual and official capacities.

24.     Defendant David G. Walsh is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for overseeing the Board of Regents administration and policy-making, including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

25.     Defendant Betty Womack is a Regent of the University of Wisconsin System, a public university system organized and existing under the laws of the State of Wisconsin, and is responsible with other Regents and officials for Board of Regents administration and policy-making, including the policies and procedures contained herein.   She is sued both in her individual and official capacities.

26.     Defendant Kevin P. Reilly is the President of the University of Wisconsin System, a public university organized and existing under the laws of the State of Wisconsin, and is responsible for overseeing campus administration including the policies and procedures contained herein.  He is sued both in his individual and official capacities.

27.     Defendant Carolyn "Biddy" Martin is the Chancellor of the University of Wisconsin-Madison, and is responsible for overseeing campus administration including the

policies and procedures contained herein.   She is sued both in her individual and official capacities.

28.     Defendant Associated Students of Madison is the student government at the University of Wisconsin-Madison, which pursuant to state law is responsible for allocating segregated university fees to recognized student organizations on campus, but has organized and defined itself as an entity independent of the University of Wisconsin-Madison, and is funded by segregated university fees paid by individual students.

29.     Defendant Carl Fergus is the former chair of the Student Services Finance Committee at the University of Wisconsin-Madison, is responsible for determining whether student organizations are eligible to receive segregated university fee funding and allocating those funds, and is sued in his official capacity.

30.     Defendant Joseph French is a former member of the Student Services Finance Committee at the University of Wisconsin-Madison, was responsible for determining whether student organizations were eligible to receive segregated university fee funding and allocating those funds, and is sued in his official capacity.

31.     Defendant Kurt Gosselin is the former chair of the Student Services Finance Committee at the University of Wisconsin-Madison, was responsible for determining whether student organizations were eligible to receive segregated university fee funding and allocating those funds, and is sued in his official capacity.

32.     Defendant Kyle Szarzynski is a member of the Student Services Finance Committee at the University of Wisconsin-Madison, is responsible for determining whether student organizations are eligible to receive segregated university fee funding and allocating those funds, and is sued in his official capacity.

33.    Defendant Brandon Williams is Chair of the Student Services Finance Committee at the University of Wisconsin-Madison, is responsible for determining whether student organizations are eligible to receive segregated university fee funding and allocating those funds, and is sued in his official capacity.

34.    Defendant Michael Romenesko is a member of the Student Services Finance Committee at the University of Wisconsin-Madison, is responsible for determining whether student organizations are eligible to receive segregated university fee funding and allocating those funds, and is sued in his official capacity.

35.    Defendant Matthew Manes is a member of the Student Services Finance Committee at the University of Wisconsin-Madison, is responsible for determining whether student organizations are eligible to receive segregated university fee funding and allocating those funds, and is sued in his official capacity.

36.    Defendant Ashleigh Michael is a member of the Student Services Finance Committee at the University of Wisconsin-Madison, is responsible for determining whether student organizations are eligible to receive segregated university fee funding and allocating those funds, and is sued in her official capacity.

37.    Defendant Tim Fung is a member of the Student Services Finance Committee at the University of Wisconsin-Madison, is responsible for determining whether student organizations are eligible to receive segregated university fee funding and allocating those funds, and is sued in his official capacity.

38.    Defendant Khamseng Yang is a member of the Student Services Finance Committee at the University of Wisconsin-Madison, is responsible for determining whether

student organizations are eligible to receive segregated university fee funding and allocating those funds, and is sued in his official capacity.

39.     Defendant Eugene Dreyster is a member of the Student Services Finance Committee at the University of Wisconsin-Madison, is responsible for determining whether student organizations are eligible to receive segregated university fee funding and allocating those funds, and is sued in his official capacity.

40.     Defendant April Kigeya is a member of the Student Services Finance Committee at the University of Wisconsin-Madison, is responsible for determining whether student organizations are eligible to receive segregated university fee funding and allocating those funds, and is sued in her official capacity.

41.     Defendant Jake Burow is a member of the Student Services Finance Committee at the University of Wisconsin-Madison, is responsible for determining whether student organizations are eligible to receive segregated university fee funding and allocating those funds, and is sued in his official capacity.

42.     Defendants Student Services Finance Committee Members 1-5 are the vacant member seats on the Student Services Finance Committee at the University of Wisconsin-Madison, are responsible for determining whether student organizations are eligible to receive segregated university fee funding and allocating those funds, are named as defendants by their official titles under Fed. R. Civ. P. 17(d), and are sued in their official capacities.

## FACTUAL BACKGROUND

### A.  Overview of the Segregated Student Fee System at the University of Wisconsin.

43.     The UW System is a public university organized and existing under the laws of the State of Wisconsin, and receives funding from the State of Wisconsin in order to operate.

44.     Upon information and belief, the funds distributed to the UW System by the State of Wisconsin are raised, in part, by taxing state residents, tuition and fees paid by students, general operating receipts, gifts, trusts, and federal funds.

45.     The UW System is composed of various branch campuses throughout the State of Wisconsin.   The UW System Board of Regents (Regent Defendants) issues policies and procedures that each branch campus must adopt.

46.     Wisconsin law gives the power of university governance to the Regent Defendants, president (Defendant Reilly), chancellors (Defendant Martin), and faculty.   Wis. Stat. § 36.09 (2009).

47.     Wisconsin law also gives students a limited role in university governance:

> The students of each institution or campus subject to the responsibilities and powers of the board, the president, the chancellor and the faculty shall be active participants in the immediate governance of and policy development for such institutions. . . . Students in consultation with the chancellor and subject to the final confirmation of the board shall have the responsibility for the disposition of those student fees which constitute substantial support for campus student activities.

Wis. Stat. § 36.09(5).

48.     Since the creation of the UW System, the Regent Defendants, have imposed a segregated university fee (SUF) on all students.

49.     Each student pays tuition and the SUF each academic term to the respective UW System institution that he or she attends.   The UW System uses student tuition, in part, to fund the departments, programs, research, salaries, and other activities in which each branch university engages.   The SUF is a mandatory, non-instructional fee, paid by students only.

50.     The Regent Defendants issued Financial Administration Policy F50 concerning the SUF.   A copy of Financial Administration Policy F50 is attached as Exhibit 1 to this Complaint.

51.     The SUF is divided into "allocable" and "nonallocable" fees.

52.     According to Policy F50, allocable SUF funds are allocated by students, in consultation with the chancellor and subject to the final confirmation of the Regent Defendants. *See* Ex. 1, Policy F50 § I.(A)(1).

53.     According to Policy F50, the allocable portion of the SUF provides substantial support for campus student activities and services, including "operations, activities and programs of recognized student organizations."  *See* Ex. 1, Policy F50 § I.(B)(6)(a).

54.     The total SUF budget varies year by year depending on, *inter alia*, the amount of money allocated to eligible RSOs.

55.     Defendant Reilly is charged with implementing the Regent Defendants' policies across the UW System.

56.     Defendants Martin and ASM follow UW System Policy F50 and other Board of Regents policies in creating policies and procedures for distributing the SUF funds to RSOs at UW-Madison.

57.     UW-Madison invites students to form student organizations and engage in expressive activities on campus.  The Center for Leadership and Involvement ("CFLI") is dedicated to overseeing all aspects and policies pertaining to student organizations on campus.

58.     CFLI issues the Student Organization Office Handbook ("SOO Handbook"), which contains policies and procedures governing the formation and operation of student organizations at UW-Madison.

59.     The SOO Handbook distinguishes between registered and non-registered student organizations.  Registered student organizations (RSOs) receive many benefits from UW-Madison that non-registered student organizations do not receive.

60.     According to the SOO Handbook, RSOs benefit by receiving access to university facilities and services, including use of university facilities in the Wisconsin Union and elsewhere on campus, participation in UW-Madison services, events, and programs for RSOs, and the opportunity to apply for ASM grants and other sources of funding.  A copy of the relevant portions of the 2008–09 SOO Handbook is attached as Exhibit 2 to this Complaint.

61.     Non-registered student organizations do not have access to any of the benefits listed in the SOO Handbook.

62.     UW-Madison permits RSOs to apply for and receive funding from the allocable SUF through the ASM student government.

63.     ASM provides funding to RSOs through Event Grants, Operations Grants, Travel Grants, the Open Fund, and the General Student Services Fund (GSSF).

64.     The Student Services Finance Committee (SSFC), a committee of the ASM, annually allocates the GSSF to RSOs deemed eligible and to University departments.

65.     The SSFC is composed of 15 voting student members as well as non-voting Chancellor's Appointees.

66.     The GSSF is funded by the SUF and provides substantial operations funding to RSOs that provide non-academic but educational direct services to the UW-Madison campus.

67.     The size of the total GSSF budget is determined by the sum of each GSSF budget allocated to each eligible RSO.  The total GSSF budget is not set in advance of the allocation process, but is determined as a result of the process.

68.     The SSFC has the authority to recommend raising, freezing, or lowering the funding of existing GSSF organizations and to recommend accepting or denying new funding requests. Those recommendations go first to the ASM Student Council, then the UW-Madison

Chancellor, and finally, the Regent Defendants for approval.  A copy of the SSFC website, which describes its functions, is attached as Exhibit 3 to this Complaint.

69.     Prior to applying for GSSF funding, an RSO must be deemed eligible by the SSFC.  An RSO applies for GSSF eligibility by filing a GSSF Eligibility Application, which contains eligibility criteria that the RSOs must meet.  A copy of the 2009-2010 GSSF Eligibility Application is attached as Exhibit 4 to this Complaint.

70.     ASM and Defendant Martin promulgate GSSF eligibility criteria that RSOs must meet in order to be deemed eligible to receive a GSSF budget.  These criteria are published as ASM Bylaws.

71.     In the fall of 2008, ASM Bylaw 2.032(3)(c)3 contained the following General Requirements for GSSF eligibility:

1) The group must be an RSO
2) The group must have written governing documents
3) The group must have completed and submitted the eligibility application by the deadline set by the SSFC
4) A representative of the group must attend the scheduled eligibility hearing
5) University students must be the principal focus of the group's programming
6) University students must be the principal beneficiaries of the group's programming

A copy of ASM Bylaws containing the GSSF Eligibility Criteria is attached as Exhibit 5 to this Complaint.

72.     In the fall of 2008, ASM Bylaw 2.032(3)(c)5 contained the following Direct Service Requirements for GSSF eligibility:

1) The group must provide to the students of the university a specific and identifiable direct service, as defined by ASM bylaw 2.032(3)(c)2c
2) The group must provide a written mission statement outlining the group's direct service(s)
3) The direct service(s) provided must be the primary focus of the group
4) The direct service(s) of the group must be aimed at reaching all university students
5) University students must be the principal focus of the group's direct service(s)

15

6) University students must be the principal beneficiaries of the group's direct service(s)
7) The group must demonstrate that the university does not provide a substantially equivalent direct service(s)
8) The direct service(s) must be educational, but cannot be a credit producing activity.

*See* Ex. 5.

73.     ASM Bylaw 2.032(3)(c)2c defines "direct service" as follows:

Direct service shall mean any program offered by the group which possess all of the following characteristics:

1) The program must be available upon request by recipients
2) The program can be tailored subject to the needs of the recipients within the mission of the group
3) The program must be accessible to the recipients regardless of recipient's participation and/or membership in the group
4) The program must be available to recipients continually throughout the course of the fiscal year
5) The program is not an individual event, series of events, publication, or a leadership development opportunity for group member(s)

*See* Ex. 5.

74.     Before the SSFC approves an RSO's eligibility, the RSO may also file a GSSF Funding Request.  If the RSO is granted eligibility, then the SSFC will hold hearings and vote on the RSO's funding request.

75.     Defendants' review GSSF eligibility and funding applications a year in advance. Thus, during the fall of 2008, SSFC reviewed RSO eligibility and funding applications for the 2009–2010 academic years.  RSOs that are awarded GSSF eligibility retain that status for two consecutive academic years, but must resubmit a GSSF funding request every year.

76.     RSOs that receive a GSSF budget do not receive a lump sum payment of the entire budget to use throughout the academic year.   An RSO receives funding on a

reimbursement basis by submitting receipts and invoices for activities conducted pursuant to the approved budget.

77.     If an RSO is denied GSSF eligibility, it can appeal that decision by filing a complaint with the Student Judiciary.

78.     The Student Judiciary is empowered to interpret ASM bylaws and ensure they are applied in a viewpoint neutral manner.

79.     Once a complaint is received by the Student Judiciary, a panel of three judges is assigned to hear the complaint.  A decision of those three judges may be appealed to the full judiciary.  Once the Student Judiciary renders a final opinion from the full body, a RSO can appeal to the Chancellor to resolve their complaint.

80.     The GSSF provides funding for a wide variety of RSOs, including:  Adventure Learning Program, Campus Women's Center, CALS Student Council, Engineers without Borders, FH King: Students for Sustainable Agriculture, Greater University Tutorial Service, MEChA, MultiCultural Student Coalition, PAVE, Roman Catholic Foundation (Badger Catholic), Sex Out Loud, Student Leadership Program, UW-Madison Student Radio (WSUM), Vets for Vets, WISPIRG, and Wunk Sheek.  Copies of UW-Madison's Center for Leadership and Involvement RSO Directory containing the descriptions of these RSOs are attached as Exhibit 6 to this Complaint.

81.     Some of these GSSF-funded RSOs espouse viewpoints with which Plaintiffs disagree.  But because of the mandatory SUF, Plaintiffs are forced to fund these viewpoints.

**B.   Background on CFACT and its History as an RSO at UW-Madison**

82.     CFACT was founded in 2002 as a non-profit, non-partisan, student-run advocacy group at UW-Madison that gives students the opportunity to participate in research, advocacy,

and development of public policy involving environmentalism and other social concerns. The organization believes that most consumer and environmental problems can best be met and overcome through the power of the free enterprise system and the ingenuity of science and technology.

83.    CFACT was founded as a direct response to WISPIRG, an RSO at UW-Madison. WISPIRG, like CFACT, focuses on environmental issues, but from a liberal viewpoint.

84.    CFACT's founder at UW-Madison, Matt Modell, did not agree with the philosophy of WISPIRG. Thus, he endeavored to create an organization that offered students with different viewpoints a chance to participate in the same types of activities and services offered by WISPIRG, but with an organization that more closely shared their views.

85.    Modell was later joined by a former member of WISPIRG who helped him establish a program built on the WISPIRG model.

86.    CFACT's mission, GSSF budget proposals, and programming were specifically modeled after WISPIRG's, as WISPIRG had been successfully funded by the SSFC.

87.    CFACT's primary service is to supplement every students' classroom education with real-world knowledge about environmental and consumer issues that can be applied across a wide variety of viewpoints and ideas.

88.    CFACT provides volunteer and internship programs to students. In these programs, students learn how to research, express ideas, address issues that matter to them, write letters to the media, and make presentations to large groups of people.

89.    CFACT hosts large group meetings, which are a forum for discussion and education by and for students. Large group meetings also use educational videos and speakers to discuss and debate ideas.

90.    CFACT provides campaigns to serve students.  Campaigns consist of small groups of students who gather to work on campus and community issues personally important to them.  CFACT campaigns meet weekly.  Campaigns are used to educate the UW-Madison student body about environmental issues through a variety of expressive means, including, but not limited to, flyers, reports, surveys, activities on Library Mall, and speakers.

91.    Each campaign conducts research, produces a report on the issue, can invite speakers to discuss issues, and shares that information with students through interactive surveys, handouts, and issue advocacy.

92.    Any student can participate in CFACT's campaigns.

93.    Last year, CFACT's campaigns included:  Keep Madison Green, Endangered Species, Lakes, Environmental Economics, Earth Day, Stewardship, Comparative Pricing, Energy, Global Issues, and Plastics to Profit.

94.    WISPIRG is an RSO on campus and labels itself as a student activist group. WISPIRG conducts its activities from a politically liberal viewpoint.  WISPIRG is a student directed advocate for consumer rights, environmental protection, democracy issues, and hunger and homelessness issues.  WISPIRG uses grassroots activism and civic participation to empower students, enabling them to make meaningful change on the issues they care about.  *See* Ex. 6.

95.    WISPIRG conducted the following campaigns during the 2008-2009 academic year:  New Voters Project, Hunger and Homelessness, Making Higher Education Affordable, Global Warming, Conservation and Recycling, Advance Public Transit, Making Madison a Fair Trade Town, Protecting Students from Bad Credit Card Practices, and Affordable Textbooks.

96.    WISPIRG espouses viewpoints with which Plaintiffs disagree, but are forced to fund through the Defendants mandatory SUF.

## C.  Denial of Eligibility to CFACT by SSFC.

97.    The 2002 SSFC granted GSSF eligibility and funding to CFACT, and CFACT has obtained eligibility and funding each year since then.

98.    In 2008, CFACT, WISPIRG and several other GSSF funded RSOs were due to reapply for GSSF eligibility and funding.

99.    The 2009-2010 GSSF Eligibility Application required each RSO to submit a completed application, a copy of its governing documents, a copy of its mission statement, and the names of its board of directors, as well as a copy of its 2007-2008 End of Year Report (EOYR) if they received SSFC funding during the previous academic year.

100.    The SSFC required the Eligibility Application and accompanying documents to be submitted by noon, August 18, 2008, by returning them to the SSFC office in the UW-Madison Memorial Union.

101.    CFACT's Board of Directors completed all necessary parts of the Eligibility Application and compiled all of the required documents, including the EOYR, because CFACT had received SSFC funding during the 2007-08 academic year.

102.    At least four members of CFACT reviewed the Eligibility Application and verified that it was complete and that all required documents were included: Mr. James D. Hill, Ms. Alyssa Hext, Plaintiff William Merrick, and Mr. Paris Hoon-Glazer.

103.    On the morning of August 18, 2008, Mr. Hill and Ms. Hext reviewed the materials to be submitted, checking and double checking that all required portions were included.

104.    The directions on the GSSF Eligibility Application instructed applicants to paper clip, rather than staple, the various sections of the document together.  Thus, Mr. Hill and Ms.

Hext paper-clipped the different sections together as instructed, and verified that all required materials, including the EOYR, were included.

105.   Upon determining that their application was complete, Mr. Hill and Ms. Hext went together to the SSFC office on the morning of August 18, 2008 to deliver it, as instructed on the application.

106.   When Mr. Hill and Ms. Hext arrived at the SSFC office, it was empty.  In the doorway, there was a cardboard box with a sign on it indicating that was the place to leave GSSF eligibility applications.  There was no one in the office to verify that the application had been turned in, no time or date stamp available to verify the submission, and no sign-in sheet to reflect when the application was submitted.

107.   As a result, Mr. Hill and Ms. Hext placed CFACT's complete Eligibility Application in the unattended cardboard box as instructed.

108.   On September 19, 2008, CFACT submitted its 2009-2010 GSSF Funding Request.  CFACT requested $163,671.00 in GSSF funding.

109.   On September 22, 2008, the SSFC held CFACT's presentation hearing for eligibility.  At this hearing, RSOs make their presentations on eligibility and answer questions from the SSFC.  Presiding at this meeting were Defendants Carl Fergus, Joseph French, Kurt Gosselin, Zorian Lasowski, and Kyle Szarzynski.

110.   CFACT's GSSF Eligibility Application described its direct service to the UW-Madison campus as education, volunteer opportunities, internship programs, speakers, and campaigns, among other things.  A copy of CFACT's 2009-2010 Eligibility Application is attached as Exhibit 7 to this Complaint.

111.   When CFACT presented its GSSF Eligibility Application at the presentation hearing, one of the SSFC members commented that it appeared that he did not have some of the pages of CFACT's EOYR.  The presentation and questions continued without reference to these pages again.

112.   At the following SSFC meeting, when CFACT's Eligibility Application was debated, Defendant Gosselin approached Mr. Hill and told him that he did not have three out of four pages from CFACT's EOYR and showed Mr. Hill what they looked like.  Gosselin then suggested to Mr. Hill that he print them off before the debate on CFACT's eligibility began. Within five minutes Mr. Hill was able to print off copies for all of the SSFC members and pass them out in open forum, fully completed.  The remainder of CFACT's GSSF Eligibility Application in the SSFC's possession referred directly to the "missing" three pages of the EOYR.

113.   During the debate, Defendants Fergus and French asked Defendant Gosselin if the missing pages were not in fact turned in on time with the rest of the packet.  Defendant Gosselin said, "I cannot confirm that they were turned in on time."

114.   Defendant Szarzynski stated that if it cannot be proven that the documents were turned in late, and since CFACT members insisted they had been part of the packet they turned in on time, that they should give CFACT the benefit of the doubt and consider the materials timely submitted.

115.   Defendants Fergus and French stated that they believed the materials were untimely since they were not part of the packet they had, even though they had no evidence that the missing pages were not turned in on time.

116.    On information and belief, other RSO GSSF Eligibility Applications were missing the entire EOYR or turned in the EOYR late.  These other applicants were granted eligibility.

117.    Zorian Lasowsky gave Mr. Hill a document listing GSSF applicants who had failed to file budget tracking sheets as required by the application.  On this document, Lasowsky listed that CALS Student Council, Engineers without Borders, F.H. King, Legal Information Center, Student Leadership Program, Sex Out Loud, WISPIRG, Wunk Sheek, and WSUM Radio did not submit "Students Served Budget Tracking Form[s]" as required by the GSSF Eligibility Application.  A copy of the document form from Mr. Lasowsky is attached as Exhibit 8 to this Complaint.

118.    Nevertheless, SSFC voted to deny CFACT eligibility by a vote of three "nays" and one "present."  Copies of the SSFC eligibility voting records for CFACT are attached as Exhibit 9 to this Complaint.

119.    Defendants Carl Fergus and Joseph French, and Mr. Lasowsky voted that CFACT's Eligibility Application was not complete because the EOYR was "missing," but Kyle Szarzynski voted that the Eligibility Application was complete.  *See* Ex. 9.

120.    Defendants Fergus and French voted that the EOYR was not filed on time, but Mr. Lasowsky and Defendant Szarzynski voted that it was turned in on time.  *See* Ex. 9.

121.    Defendant Fergus voted that CFACT provides a specific and identifiable direct service pursuant to ASM Bylaw 2.032(3)(c)2c, because students can go to CFACT for information and resources to implement a program on their own.  But Fergus did not "consider the official CFACT campaigns to be a direct service because the program is not accessible to participants regardless of participation and/or membership in CFACT."  Fergus also wrote that

CFACT's direct service was not the primary focus of the group because what he considered to be the direct service, information and resources, took up only 10-20% of the group's time. Fergus voted to deny CFACT eligibility. *See* Ex. 9.

122. Defendant Szarzynski voted that CFACT did not provide a specific and identifiable direct service pursuant to ASM Bylaw 2.032(3)(c)2c, because CFACT's campaigns are the focus of the group, but are comprised of a series of events. But Szarzynski did consider the direct service – the campaigns – to be the primary focus of CFACT. Szarzynski voted to deny CFACT eligibility. *See* Ex. 9.

123. However, the Student Judiciary found that Defendant Szarzynski voted to grant WISPIRG eligibility, even though it also provides campaigns as a service to students. A copy of the Student Judiciary's panel decision in CFACT's appeal describing Defendant Szarzynski's voting record is attached as Exhibit 10 to this Complaint.

124. Defendant French voted that CFACT did not provide a specific and identifiable direct service pursuant to ASM Bylaw 2.032(3)(c)2c, because CFACT's campaigns "are not accessible regardless of the recipients [sic] participation. To receive the benefits of the campaigns they must be a participant of the groups [sic] programming. All other programming are events or series of e[vents]." French voted to deny CFACT eligibility. *See* Ex. 9.

125. Lasowsky voted that CFACT did provide a specific and identifiable direct service pursuant to ASM Bylaw 2.032(3)(c)2c through its campaigns. But Lasowsky voted that CFACT's direct service, the campaigns, were not the primary focus of the group. He also voted that the direct service advocated an issue, but was not educational. Lasowsky voted "abstain" on CFACT's eligibility. *See* Ex. 9.

126.    The SSFC granted WISPIRG eligibility for a GSSF budget, but gave two different rationales for doing so.

127.    On information and belief, the SSFC initially granted GSSF eligibility to WISPIRG because the SSFC determined that its direct service was participation in the organization and providing a forum for political involvement.  However, the SSFC denied GSSF eligibility to Engineers without Borders, even though its direct service was inherently the same as WISPIRG.

128.    On information and belief, the SSFC later reheard WISPIRG's eligibility application and decided that its direct service was issue advocacy, which is conducted through its campaigns.  The SSFC believed that WISPIRG provided a direct service because individual students on campus could request from them the ability to advocate on an issue of concern and that the organization would take that into consideration and equip them to go forth and advocate on it.  The SSFC granted eligibility to WISPIRG once again.  A copy of the Student Judiciary's Judgment in Engineers without Borders' appeal, which describes the above facts, is attached as Exhibit 11 to this Complaint.

129.    Defendants Fergus, French, and Szarzynski voted to deny eligibility to CFACT because they disagreed with the viewpoint it expresses on campus.

130.    On November 21, 2008, "Forward Thinking, The Collaborative Blog Of Madison's Progressive Students," included a blog entry from "KS."  "KS" wrote "Tonight, SJ dismissed CFACT's second appeal over their eligibility decision, all but ensuring the death of the group on campus as we currently know it.  Good riddens [sic] to an awful organization, one whose accomplishments include bringing Ted Nugent to campus, fawning over nuclear power, denying the existence of global warming and f[***]ing with student-controlled finances

throughout the country.  It's convenient that this do-nothing, country club, crazy right-wing group also didn't meet the eligibility criteria for GSSF funding, the reason for their denial and agreed on by EVERY member of the SSFC."  A copy of the November 21, 2008 Forward Thinking blog is attached as Exhibit 12 to this Complaint.

131.    On December 2, 2008, "KS" posted another entry to the Forward Thinking blog. "KS" referred to "my Herald oped piece today," which discussed ASM's Constitutional Committee.  A copy of the December 2, 2008 Forward Thinking blog by "KS" is attached as Exhibit 13 to this Complaint.

132.    The op-ed piece in the December 2, 2008 Badger Herald newspaper article discussing ASM's Constitutional Committee was written by Kyle Szarzynski.  A copy of the December 2, 2008 op-ed article written by Kyle Szarzynski is attached as Exhibit 14 to this Complaint.

133.    Kyle Szarzynski wrote the "KS" entries on the Forward Thinking blog.

134.    Kyle Szarzynski denied eligibility to CFACT because of the viewpoint it expresses.

**D.  CFACT's Appeal of the GSSF Eligibility Denial.**

135.    On October 3, 2008, CFACT filed a complaint and petition with the Student Judiciary requesting relief from the SSFC's viewpoint discriminatory eligibility denial.  CFACT alleged that Defendant Szarzynski discriminated based on viewpoint because he found that CFACT's campaigns did not constitute a direct service, but he found that WISPIRG's virtually identical campaigns, save for their viewpoint, did constitute a direct service.

136.    A panel of the Student Judiciary heard CFACT's case on November 5, 2008.  The Student Judiciary rendered a decision finding that Szarsynski did not discriminate based on

26

viewpoint, and that it was CFACT's burden to demonstrate that its Eligibility Application was complete.  *See* Ex. 10.

137.    CFACT appealed this decision to the full Student Judiciary, but that appeal was summarily denied.

138.    On January 27, 2009, CFACT submitted a letter dated January 23, 2009, to Defendant Martin, Chancellor of UW-Madison.  The letter argued that the SSFC committed viewpoint discrimination and violated equal protection by denying eligibility to CFACT but granting eligibility to WISPIRG, and committed clerical negligence and due process violations by losing portions of CFACT's Eligibility Application. The letter to the Chancellor is attached as Exhibit 15 to this Complaint.

139.    The Regent Defendants and Defendant Martin supervise the SSFC and ASM findings concerning GSSF eligibility and funding.

140.    On information and belief, Defendant Martin knew about the 2008 GSSF eligibility process and its results.

141.    On information and belief, Defendant Martin knew what GSSF eligibility requirements were contained in the ASM Bylaws.

142.    On information and belief, Defendant Martin knew about the SSFC's denial of GSSF eligibility to CFACT.

143.    On information and belief, Defendant Martin knew about SSFC's grant of GSSF eligibility to WISPIRG.

144.    On information and belief, Defendant Martin knew that SSFC's eligibility decisions were challenged several times by various RSOs during the 2008 GSSF eligibility process.

145.    On April 2, 2009, Defendant Martin denied CFACT's appeal because she argued that CFACT could only appeal viewpoint neutrality violations to the chancellor.  She found that CFACT's allegations regarding the "missing" EOYR did not constitute a viewpoint neutrality violation, and were properly adjudicated by the Student Judiciary.  Defendant Martin argued that because there is no appeal of the Student Judiciary's EOYR finding, there was no basis to change the outcome for CFACT.  A copy of Defendant Martin's April 2, 2009 letter to CFACT is attached as Exhibit 16 to this Complaint.

146.    Defendant Martin approved of the SSFC's actions, policies, and findings concerning CFACT's request for 2009-10 GSSF eligibility.

147.    In denying CFACT's appeal, Defendant Martin facilitated and approved the SSFC's actions in using vague eligibility criteria that give it unbridled discretion to discriminate against CFACT based on viewpoint.

148.    In denying CFACT's appeal, Defendant Martin facilitated and approved ASM's vague and viewpoint discriminatory bylaws and policies concerning GSSF eligibility.

149.    In denying CFACT's appeal, Defendant Martin was deliberately indifferent to CFACT's federally protected rights to access the SUF and GSSF on an equal basis as all RSOs.

150.    Defendant Martin intentionally refused to rectify the viewpoint discriminatory behavior of the SSFC and its members.

151.    Defendant Martin intentionally refused to rectify the obvious error committed by the SSFC and the Student Judiciary in finding that CFACT's eligibility application was incomplete, despite the fact that no evidence supported this conclusion.

152.    Defendant Martin allowed ASM's GSSF eligibility bylaws to persist despite clear constitutional defects.

153.    The persistence of these ASM eligibility bylaws is a result of callous disregard for students' constitutional rights to access SUF monies.

154.    Despite her obligations under shared governance, Defendant Martin failed to correct these defective bylaws, failed to remedy unconstitutional eligibility denials, and allowed the SSFC to allocate SUF money on a viewpoint discriminatory basis.

155.    None of the Defendants have restored CFACT's GSSF eligibility.

156.    As a result of the eligibility denial, CFACT is significantly hindered in its ability to express its message on campus.

157.    CFACT applied for a GSSF budget of $163,671.00, but did not receive a GSSF budget in any amount due to the denial of eligibility.

158.    CFACT is disabled from conducting its campaigns on environmental issues on campus and providing students with an alternative viewpoint to express on these critical issues.

159.    SSFC demands that CFACT return all office equipment purchased with GSSF funds now that CFACT no longer has a GSSF budget for the 2009-2010 academic year.  As a result, CFACT is in imminent danger of losing all of its office equipment with which it conducts its expressive campaigns.

### FIRST CAUSE OF ACTION

### Violation of Plaintiffs' First Amendment Right to Freedom of Speech<br>Viewpoint Discrimination (42 U.S.C. § 1983)

160.    Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

161.    By conditioning student organizations' eligibility for segregated university fee funding on vague and overbroad standards, by denying Plaintiffs' eligibility for General Student Services Fund funding based on these nebulous, incomprehensible, and unbridled standards, by granting GSSF eligibility to some student organizations but not others even though they provide

the same activities, and by denying Plaintiffs' eligibility for GSSF funding based on the viewpoint they express on campus, among other things, Defendants, by policy and practice, have discriminated on the basis of viewpoint and deprived Plaintiffs of their ability to express their ideas freely on issues of political, social, and cultural concerns at UW-Madison.

162.   Defendants' GSSF policies and practices are impermissibly vague and ambiguous and give unfettered discretion to Defendants to suppress and/or discriminate against disfavored viewpoints at UW-Madison.

163.   Defendants, acting under color of state law, and by policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint, used vague, overbroad, ambiguous, and unbridled criteria to exclude Plaintiffs from the GSSF forum, and deprived Plaintiffs of their clearly established rights to freedom of expression and due process of law secured by the First and Fourteenth Amendments to the United States Constitution.

164.   Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm.  They are entitled to an award of monetary damages, including punitive damages, and equitable relief.

165.   Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### SECOND CAUSE OF ACTION

### Violation of Plaintiffs' First Amendment Right to Free Speech
### Compelled Speech (42 U.S.C. § 1983)

166.   Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

167.   By mandating that students pay a segregated university fee to fund student organization expression, by conditioning student organization benefits on compliance with the

Defendants' vague, overbroad, and viewpoint discriminatory eligibility policies, by granting GSSF eligibility to some student organizations but not others even though they provide the same activities, and by singling out certain expression and activities for disfavored and differential treatment, among other things, Defendants, by policy and practice, have compelled Plaintiffs to financially support speech in favor of subjects with which they disagree while denying them the ability to equally access the segregated university fee funding, thereby depriving Plaintiffs of their ability to express their ideas freely on issues of political, social, and cultural concerns at UW-Madison.

168.    Defendants, acting under color of state law, and by policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint, compelled Plaintiffs and all students to support viewpoints with which they disagree, and deprived Plaintiffs of their clearly established rights to freedom of expression secured by the First Amendment to the United States Constitution.

169.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm.  They are entitled to an award of monetary damages, including punitive damages, and equitable relief.

170.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## THIRD CAUSE OF ACTION

### Violation of Plaintiffs' Fourteenth Amendment Right to Due Process of Law
### (42 U.S.C. § 1983)

171.    Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

31

172.    By conditioning student organizations' eligibility for GSSF funding on vague, overbroad, viewpoint discriminatory and unbridled standards, by denying Plaintiffs' GSSF eligibility application based on these vague and viewpoint discriminatory standards, by denying Plaintiffs' GSSF eligibility application on the totally unsupported allegation that certain pages were not timely submitted, and by granting exemptions to some student organizations but not Plaintiffs for allegedly not timely submitting GSSF application papers, among other things, Defendants, by policy and practice, have violated Plaintiffs' right to due process of law.

173.    Defendants, acting under color of state law, and by policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint and deprived Plaintiffs of their clearly established rights to due process of the law secured by the Fourteenth Amendment to the United States Constitution.

174.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm.  They are entitled to an award of monetary damages, including punitive damages, and equitable relief.

175.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### FOURTH CAUSE OF ACTION

### Violation of Plaintiffs' Fourteenth Amendment Right to Equal Protection of the Law (42 U.S.C. § 1983)

176.    Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

177.    By conditioning student organizations' eligibility for GSSF funding on vague, overbroad, viewpoint discriminatory and unbridled standards, by denying Plaintiffs' GSSF eligibility application based on these vague and viewpoint discriminatory standards, by granting

eligibility to student organizations that conduct the same services and activities at UW-Madison that CFACT seeks to conduct, by denying Plaintiffs GSSF eligibility based on the content and viewpoint of their speech, among other things, Defendants, by policy and practice, have discriminated on the basis of viewpoint and treated Plaintiffs differently than similarly situated student organizations, thereby depriving Plaintiffs of the equal protection of law.

178.    Defendants, acting under color of state law, and by policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint and deprived Plaintiffs of their clearly established rights to equal protection of the law secured by the Fourteenth Amendment to the United States Constitution.

179.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm.  They are entitled to an award of monetary damages, including punitive damages, and equitable relief.

180.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

### FIFTH CAUSE OF ACTION

### Violation of Plaintiffs' First Amendment Rights – Unconstitutional Conditions (42 U.S.C. § 1983)

181.    Plaintiffs repeat and reallege each of the foregoing allegations in this Complaint.

182.    By conditioning student organizations' eligibility for segregated university fee funding on vague, overbroad, viewpoint discriminatory, and unbridled standards, by denying Plaintiffs' eligibility for GSSF funding based on these vague and viewpoint discriminatory standards, and by denying Plaintiffs' eligibility for GSSF funding based on the viewpoint they express on campus, among other things, Defendants by policy and practice have discriminated

on the basis of viewpoint and deprived Plaintiffs of a government benefit on a basis that infringes their constitutionally protected speech.

183.    Defendants, acting under color of state law, and by policy and practice, have explicitly and implicitly discriminated on the basis of viewpoint, and conditioned receipt of a government benefit based on vague, overbroad, ambiguous, and unbridled criteria, depriving Plaintiffs of their clearly established rights to freedom of expression secured by the First Amendment to the United States Constitution.

184.    Because of Defendants' actions, Plaintiffs have suffered, and continue to suffer, economic injury and irreparable harm.  They are entitled to an award of monetary damages, including punitive damages, and equitable relief.

185.    Pursuant to 42 U.S.C. §§ 1983 and 1988, Plaintiffs are entitled to an award of monetary damages in an amount to be determined by the evidence and this Court and the reasonable costs of this lawsuit, including their reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendants Pruitt, Bartell, Bradley, Connolly-Keesler, Crain, Davis, Davis, Drew, Evers, Falbo, Loftus, Smith, Spector, Vásquez, Walsh, Womack, Reilly, Martin, Associated Students of Madison, Fergus, French, Gosselin, Szarzynski, Williams, Romenesko, Manes, Michael, Fung, Yang, Dreyster, Kigeya, Burow, and Student Services Finance Committee Members 1-5, and provide Plaintiffs with the following relief:

(A)    A declaration stating that ASM Bylaws §§ 2.032(3)(c)1-5 are facially unconstitutional because they violate the rights to freedom of speech, due process

of law, and equal protection of the law, which are guaranteed to Plaintiffs by the United States Constitution and by operation of federal law;

(B)     A declaration stating that the Defendants' policies and practices under the authority of and relating to ASM Bylaws §§ 2.032(3)(c)1-5, as described in this Complaint, are unconstitutional because they violate the rights to freedom of speech, due process of law, and equal protection of the law, which are guaranteed to Plaintiffs by the United States Constitution and by operation of federal law;

(C)     A preliminary and permanent injunction against the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf, from enforcing ASM Bylaws §§ 2.032(3)(c)1-5, facially and as-applied to Plaintiffs, because they are unconstitutionally vague, viewpoint discriminatory, and deny students the due process and equal protection of law under the First and Fourteenth Amendments;

(D)     A preliminary and permanent injunction against the Defendants, their agents, officials, servants, employees, and any other persons acting in their behalf, prohibiting from requiring CFACT to return equipment it purchased in prior years with GSSF funds;

(E)     An Order requiring the Defendants to grant CFACT GSSF eligibility immediately, or in the alternative, an Order requiring the Defendants to grant CFACT a new eligibility hearing based on new, constitutional, eligibility criteria;

(F)     A declaration stating that Defendants denial of Plaintiffs' eligibility because of Defendants' loss of a few pages from Plaintiffs' GSSF Eligibility Application violated Plaintiffs rights to freedom of speech, due process of law, and equal

protection of the law, which are guaranteed to Plaintiffs by the United States Constitution and by operation of federal law;

(G)     An Order requiring the Defendants to refund Plaintiff William Merrick's segregated university fee payments for each year that CFACT is denied General Student Services Fund eligibility;

(H)     Actual damages in the amount of $163,671.00 for infringing Plaintiffs' exercise of their First and Fourteenth Amendment rights;

(I)     Punitive damages for the violation of Plaintiffs' constitutional rights;

(J)     Nominal damages for the violation of Plaintiffs' constitutional rights;

(K)     Plaintiffs' reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(L)     All other further relief to which Plaintiffs may be entitled.


Respectfully submitted this 19th day of August, 2009,

s/David J. Hacker

DAVID J. HACKER
California Bar No. 249272
Illinois Bar No. 6283022
HEATHER GEBELIN HACKER
California Bar No. 249273
Arizona Bar No. 024167
ALLIANCE DEFENSE FUND
101 Parkshore Drive, Suite 100
Folsom, CA 95630
(916) 932–2850
(916) 932-2851—facsimile
dhacker@telladf.org
hghacker@telladf.org

DAVID A. FRENCH
Tennessee Bar No. 16692
Kentucky Bar No. 86986
ALLIANCE DEFENSE FUND
12 Public Square
Columbia, Tennessee 38401
(931) 490–0591
(931) 490–7989—facsimile
dfrench@telladf.org

(cont'd on next page)

JORDAN W. LORENCE*
Minnesota Bar No. 125210
ALLIANCE DEFENSE FUND
801 G Street, NW, Suite 509
Washington, DC  20001
(202) 393-8690
(202) 347–3622—facsimile
jlorence@telladf.org

*Application for Admission submitted under
separate cover.

KRYSTAL WILLIAMS-OBY
Wisconsin Bar No. 01019584
10 East Doty Street, Suite 800
Madison, Wisconsin 53703
(608) 204-5896
(608) 441-5707—facsimile
kingdomlegal@sbcglobal.net

ATTORNEYS FOR PLAINTIFFS

# VERIFICATION OF COMPLAINT

I, Alex J. Hansen, a citizen of the United States and resident of the State of Illinois, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Executed this 30 day of July, 2009, at ___Winnetka___, Illinois.

Alex J. Hansen

CFACT-Madison, President

## <u>VERIFICATION OF COMPLAINT</u>

I, James D. Hill, a citizen of the United States and resident of the State of Wisconsin, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Executed this  30  day of July, 2009, at ___Madison___, Wisconsin.

James D. Hill
Former CFACT-Madison, President

## VERIFICATION OF COMPLAINT

I, William T. Merrick, a citizen of the United States and resident of the State of Wisconsin, hereby declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing Verified Complaint and the factual allegations therein, and the facts as alleged are true and correct.

Executed this 31st day of July, 2009, at MADISON, Wisconsin.

_____
William T. Merrick