UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| **COLLEGIANS FOR A CONSTRUCTIVE TOMORROW-MADISON**<br><br>                                        Plaintiff,<br><br>    v.<br><br>The Regents of the University of Wisconsin System **CHARLES PRUITT,** ET AL.,<br><br>                                        Defendants. | Case No. 09-CV-514<br><br>Hon. Lynn S. Adelman<br><br>**MEMORANDUM OF LAW IN SUPPORT OF OPPOSITION TO MOTION TO COMPEL** |

## INTRODUCTION

The Wisconsin Student Public Interest Research Group, Inc. (WISPIRG), by and through undersigned counsel, opposes the motion to compel production of documents sought by Collegians for a Constructive Tomorrow-Madison (CFACT).  As set forth below, CFACT has not provided a sufficient basis for the Court to compel WISPIRG to provide the requested documents.

WISPIRG is a non-profit student organization that advocates on a variety of issues, including environmental protection, consumer protection, and homelessness.  As CFACT asserts, it is WISPIRG's counterpart and has for many years battled strenuously against WISPIRG on these and other issues.  In 2008, the University of Wisconsin-Madison defendants (collectively the "University") denied university funding to CFACT giving rise to CFACT's current claim that the denial was based on the content and viewpoint of CFACT's speech.  CFACT asserts that, to support its claim of viewpoint discrimination, WISPIRG must produce a substantial amount of internal, confidential documents and communications relating to WISPIRG's past activities, strategies, and organizational structure

1

WISPIRG objected to the discovery requests on multiple grounds.  First, CFACT's requests are overbroad and seek documents that are not relevant or reasonably likely to lead to admissible evidence.  Second, the requested documents can be (and have been) produced by parties to the case, thereby obviating the need for production by a non-party.  The merits of CFACT's claim may be adjudicated through consideration of documentary evidence already in control of the parties themselves.  Third, the scope of documents requested puts an unnecessary burden on a non-party – in this case a small, minimally staffed nonprofit organization – to undergo extensive, resource-intensive document retrieval and redaction.  Under the circumstances, CFACT has not demonstrated a sufficient basis to compel production.

It is apparent from the over-breadth of the discovery requests and CFACT's tacit admission that it is seeking production from WISPIRG merely to cross-reference documents already produced in discovery, that CFACT is using this as an opportunity to force WISPIRG to divulge information about its internal, confidential, and strategic operations.  This Court should not tolerate such open-ended fishing expeditions and should therefore deny CFACT's motion to compel.

## FACTUAL AND LEGAL BACKGROUND

On October 27th, 2010, CFACT delivered to WISPIRG a subpoena for production of documents in connection with the proceedings in <u>Collegians for a Constructive Tomorrow-Madison v. Charles Pruitt, et. al.</u>, Case Number 09-CV-514. The subpoena requested five sets of documents:

1. All agendas, minutes, audio recordings, video recordings and resolutions of the WISPIRG Board that discuss, mention or refer to WISPIRG's applications for GSSF or Contract Status Funding from July 1, 2005 to the present day.

2

2. All documents and electronically stored information containing communications between and among the WISPIRG Board, Chancellor Martin, Chancellor Wiley, Associated Students of Madison Student Council (ASM) members, Student Services Financial Committee of the Associated Students of Madison (SSFC) members, and UW-Madison employees which discuss or reference WISPIRG's GSSF eligibility applications, hearings, evaluations and appeals, from July 1, 2005 to the present day.

3. All documents and electronically stored information that contain communications between and among the WISPIRG Board, Chancellor Martin, Chancellor Wiley, ASM members, SSFC members, and UW-Madison employees which discuss or reference WISPIRG's Contract Status funding applications, hearings, evaluations and appeals, from July 1, 2005 to the present day.

4. All flyers, leaflets, advertisements, event descriptions, invitations, brochures and other documents distributed to the public that refer to WISPIRG's campaigns and service to UW-Madison students from July 1, 2005 to the present day.

5. All documents and electronically stored information containing communications between and among WISPIRG's Board of Directors, officers, interns, campaign coordinators and employees, from July 1, 2008 to the present day, that discuss any of the following topics: WISPIRG's Intern Class; 21st Century Transit Campaign; Big Red Go Green, Global Warming Solutions Campaign; Conservation and Recycling Efforts (CARE) Campaign; Hunger and Homelessness Campaign; Fair Trade Campaign; and Affordable Textbooks Project.

WISPIRG responded to CFACT's subpoena on November 12th with general and specific objections to the above requests. (*See* Decl. of David J. Hacker, Ex. 3). WISPIRG contended, *inter alia*, that the requests are overly broad, invasive and burdensome; that they are not likely to lead to relevant evidence; that the requests are cumulative and duplicative of materials already available to the parties; and that the requests are not sufficiently limited in time.

In a letter dated November 18th, 2010, CFACT responded by proposing a purported compromise that merely reduced the time period of the documents requested by an insignificant amount, but wholly failed to address WISPIRG's central concerns outlined above. (*See* Decl. of David J. Hacker, Ex. 4). Accordingly, in a response dated November 23, 2010, counsel for

WISPIRG reasserted its position that CFACT failed to establish sufficient basis to compel production of the materials requested by the subpoena (*See* Decl. of David J. Hacker, Ex. 5).

## **ARGUMENT**

### I. The Subpoenaed Documents in Request 1, Request 4 and Request 5 Are Irrelevant to CFACT's Dispute with the University of Wisconsin.

Federal Rule of Civil Procedure 26(b)(1) provides that "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense…" Rule 26(b)(2)(C) provides further that discovery must be limited by the court if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues."

In its Motion to Compel, CFACT fails to establish the relevance of documents requested beyond the period at issue: that is, 2008 when CFACT was denied funding. All documents requested before and after that time-period are irrelevant and CFACT's request for production should be summarily denied on that basis.

CFACT also fails to establish the relevance of WISPIRG's internal documents or documents not otherwise provided to the University as part of the funding application process. CFACT's subpoena requests the production of all agendas, minutes, audio recordings, video recordings and resolutions of the WISPIRG Chapter Board that discuss, mention or refer to WISPIRG's applications for GSSF or Contract Status Funding (Request 1); all flyers, leaflets, advertisements, event descriptions, invitations, brochures, and other documents distributed to the public that refer to WISPIRG's campaigns and service to the UW-Madison students (Request 4); and internal communications between and among WISPIRG's Chapter Board, officers, interns,

4

campaign coordinators, and employees (Request 5) . CFACT fails to establish that these documents are relevant, or would lead to the productions of admissible evidence. CFACT argues that the materials are relevant because they show how WISPIRG organizes itself internally, how it describes its campaigns and activities internally, and what its purposes and goals are. But the relevant issue here is how WISPIRG described its services to the University of Wisconsin. What is relevant is whether the University of Wisconsin treated CFACT differently than WISPIRG on the basis of *the university's perception* of the respective organizations' viewpoints. WISPIRG's board meetings and WISPIRG's on-campus literature (i.e. flyers, leaflets, etc.) would not have been submitted as part of the application process and so would not be relevant to the decision regarding funding.

In its Motion to Compel, CFACT cites *Southworth v. Board of Regents of the University of Wisconsin System ("Southworth II")*, 307 F.3d 566 (7th Cir. 2002) to support its assertion that the subpoenaed documents are relevant. In *Southworth*, the Seventh Circuit addressed whether the University's system for funding student groups violated viewpoint neutrality. As CFACT points out, the court stated that if the student government (the Associated Students of Madison), "were to treat one RSO's speech and expressive activities as a student service, but conclude that another RSO's speech and expressive conduct did not constitute a student service, that would constitute proof of viewpoint discrimination." *Id.* at 590. There is no dispute that if a student government gives preferential treatment to one group's viewpoint over another, that would constitute discrimination. However, CFACT's dispute with the University does not concern whether the student government gave preferential treatment to WISPIRG; the dispute concerns whether the student government discriminated against CFACT on the basis of *their* speech and

5

expressive conduct. Analysis of the student government's views of WISPIRG is immaterial to whether or not the student government disapproved of CFACTS's viewpoint.

Furthermore, although the *Southworth II* court did contemplate that courts could consider how a student government comparatively views different organizations, the court did not invite disgruntled, defunded organizations to subpoena vast quantities of internal documents from other Registered Student Organizations (RSOs) to prove their case.  Instead, the *Southworth II* court stated that the most convincing evidence is to "compare the grant amounts… allocated to various RSOs to determine whether similar RSO applications were treated equally." *Id.* At 588. According to *Southworth II*, the relevant evidence is the applications for funding and grants allocated.  As discussed in more detail below, the applications for funding are the basis on which the University made its funding decisions, as well as the basis of its perceptions of various groups applying for funding.  The applications for student funding are already in control of the parties. It is self-evident that the student government at the University did not consider WISPIRG's board minutes, internal communications, or any other item requested in CFACT's Requests 1, 4 or 5, when deciding whether to fund WISPIRG or to defund CFACT.

Not to be overlooked is the significant point that all communications between the WISPIRG board and its officers, employees, interns and other staff are entirely confidential, proprietary and in some cases privileged.  CFACT has given no basis to compel WISPIRG to expunge those confidences based on the mere hope and speculation that some potentially relevant information might surface that would marginally support its case.

Even if WISPIRG's internal documents were relevant to CFACT's claim against the University, the duplicative nature and burden of producing the documents would far outweigh their benefit.

**II. The Subpoenaed Documents are Cumulative and Duplicative.**

Not only are the documents requested by CFACT largely irrelevant, any relevant documents are duplicative of those available from parties to the action.

Federal Rule of Civil Procedure 26(b)(2)(C) provides that discovery should be limited by a court if it determines that "…the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive…" In particular, in making this determination, courts have held that the non-party status of the person or entity at issue should be taken into consideration. See *Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424 (Fed. Cir. 1993). See also *Trading Techs Int'l Inc. v. eSpeed Inc.*, 2006 U.S. Dist. LEXIS 8902 (N.D. Ill 2006); *US v. Amerigroup IL*, 2005 U.S. Dist. LEXIS 24929 (N.D. Ill 2005). And discovery should not be allowed from a non-party where the same information is sought and available from the parties and if produced would make the non-party's contribution unnecessary. See *Harris v. Wells*, 1990 U.S. Dist. LEXIS 13215 (D. Conn 1990) (granting protective order staying discovery where requests served on non-parties sought the same information as requests served on parties); *see also Rubin v. Islamic Republic of Iran*, 349 F. Supp. 2d 1108, 1111 (N.D. Ill. 2004) ("[O]pen-ended fishing expeditions will not be tolerated. Discovery has limits and these limits grow more formidable as the showing of need decreases.")

7

CFACT claims that the requested documents are necessary and relevant to show that WISPIRG's structure, activities, goals and budget are so similar to CFACT's that the University must have committed viewpoint discrimination by denying its funding application in 2008. All of this information, however, is available from parties to the case and can be specifically found in WISPIRG's present and past annual applications for funding and year-end reports. CFACT's argument that the application for funding would not provide a full picture of WISPIRG is unavailing; in fact, the application for funding is exhaustive and contains detailed information about WISPIRG's structure, goals, and activities.

The first step in the application process is to submit an eligibility application to the student government. The eligibility application asks, *inter alia*: "What specific and identifiable direct service(s)…does your organization provide or will it provide to the UW-Madison campus?"; "Please explain how your direct service(s) are made available to recipients…"; "Please explain ways in which you target your services specifically to UW-Madison students." In addition, the eligibility application asks organizations to submit "governing documents and provide an explanation as to how they are used in guiding the day to day functions of your organization." Clearly, just this initial application form discloses substantial information about WISPIRG's structure, purpose and activities.

Moreover, once the eligibility application is submitted, applying organizations must also submit an extensive year-end report. The year-end report must include a budget detailing all expenses paid by the organization during that fiscal year. The year-end report also requires organizations to answer a series of questions about their program activities and purpose, such as the specific campus needs the program or service intends to address, the group's outreach effort in educating the University population, estimates of the number of students served, details about

8

the group's day-to-day operations, information about staff meetings, what areas the group sees as having potential for growth, increased funding, or new funding, major concerns facing the organization in the year ahead, and whether the organization used the total allocation granted, among many other questions.

In addition to the year-end report, organizations must submit a "GSSF funding request," which asks another set of questions about the applying organization's structure, spending, hiring practices and intended activities. One of these questions asks groups to submit "a draft calendar of events, travel, programs, and co-sponsorships for your budget, including staff used and routine activities."

Considered in its totality, the application process requires applicants to submit a thorough and comprehensive description of the structure, activities, and aims of their organizations.  Past funding applications are already available to CFACT from parties to the dispute. To compel WISPIRG to produce scores of internal documents that may or may not bear upon WISPIRG's organizational structure and activities would be unnecessary, overly burdensome and duplicative. The documents CFACT is requesting from WISPIRG duplicate information already available from the funding applications and would only waste WISPIRG's limited financial resources. CFACT may argue that the funding application process presents an incomplete picture of WISPIRG's organization.  However, considering the multitude of in-depth questions on the application forms – questions ranging from detailed budget analyses to broader organizational goals – it is difficult to imagine precisely what CFACT would need to know about WISPIRG that is not already disclosed on WISPIRG's funding applications. CFACT has failed to assert precisely what is not on WISPIRG's funding applications that would be relevant to their dispute with the University.  Unless CFACT can demonstrate exactly how the funding applications are

9

insufficient, the court must view CFACT's Motion to Compel as little more than a fishing expedition intended to harass a long-standing campus adversary.

With respect to Requests 2 and 3 specifically, calling for the production of myriad categories of correspondence between and among WISPIRG and University representatives who are parties or in privity to parties in the case, they are the appropriate source for such documents not WISPIRG, a non-party to the action. Any compelled production by WISPIRG would be an unnecessary duplication of records. CFACT argues, however, that it is justified in seeking cumulative and duplicative materials because it needs to cross-reference against the documents provided by the parties. In arguing, however, that it intends to use WISPIRG's documents for "cross-referencing" purposes, CFACT tacitly admits that the documents are duplicative. Requiring a non-party to the proceeding to produce duplicative documents for the purpose of cross-checking against documents already obtained by from a party is wholly unnecessary and creates an unreasonable burden on the non-party. WISPIRG should not be compelled to produce documents that are already available, particularly when producing those documents will constitute a significant drain on WISPIRG's time and resources.

## III. The Document Requests Are Unduly Burdensome.

WISPIRG is a small nonprofit organization with limited financial and staffing resources. It is therefore unreasonable to subject WISPIRG to the burden of producing documents that are either duplicative or have negligible relevance.

Federal Rule of Civil Procedure 26(b)(2)(iii) provides that discovery should be limited by a court if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account…the importance of the proposed discovery in resolving the issues." Rule 45(c)(3) provides further that a court "shall quash or modify the subpoena if it . . . subjects

10

a person to undue burden." An undue burden is identified by looking at factors such as relevance, the need for the documents, the breadth of the document request, the time period covered by such request, the particularity with which the documents are described, and the burden imposed. *Flatow v. Islamic Republic of Iran*, 196 F.R.D. 203, 206-07 (D.D.C.2000). In determining whether an undue burden exists, a court should take into consideration the non-party status of the person or entity from whom discovery is sought. *E.g., Katz v. Batavia Marine & Sporting Supplies, Inc.*, 984 F.2d 422, 424 (Fed. Cir. 1993)("Although Rule 26(b) applies equally to discovery of non-parties, the fact of non-party status may be considered by the court in weighing the burdens imposed in the circumstances."); *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988), aff'd, 870 F.2d 642 (Fed. Cir. 1989)(non-party status is a significant factor in determining whether discovery is unduly burdensome); *Echostar Communications Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998)("the status of a person or entity as a non-party is a factor which weighs against disclosure").

Identifying and producing communications sent by the WISPIRG Board of Directors, or WISPIRG officers, interns, campaign coordinators and employees (Requests 1, 2, 3 and 5) would require costly searches that would constitute a significant expense to WISPIRG, a small campus-based nonprofit. Without any basis, CFACT dismisses the burden of production by baldly asserting that Requests 2 and 3 could be satisfied by simply asking its Board members to perform a quick search of their inbox and outbox to see if there are any e-mails relevant to the university funding procedures. As an initial matter, e-mail communications sent over five years ago are not likely to be easily retrieved by a quick search; more extensive information retrieval and redaction will invariably be required. Moreover, the document request asks not only for e-mails, but all communications.

11

Further, CFACT fails to address in its Motion to Compel the expense associated with Requests 4 and 5. Request 5 asks for all communications between WISPIRG's Board, officers, interns, campaign coordinators, and employees concerning six different campaigns that WISPIRG has engaged in over the last five years: the 21st Century Transit Campaign, the Big Red Go Green, Global Warming Solutions Campaign, the Conservation and Recycling Efforts (CARE) Campaign, the Hunger and Homelessness Campaign, the Fair Trade Campaign, and the Affordable Textbooks Project. Producing all of the communications sent on these topics would require quite a bit more than a few individuals checking their inbox and outbox. WISPIRG would first be required to locate and contact scores of interns and employees, many of whom may no longer work for WISPIRG. Then, all of these individuals would be required to sort through all of the communications produced for six separate campaigns. Just one of WISPIRG's campaigns most likely generates hundreds of e-mails. It is not hard then to imagine the time and effort that WISPIRG would need to expend to produce the communications for six campaigns.

Finally, Request 4 seeks the production of every flyer, leaflet, advertisement, event description, invitation, and brochure that WISPIRG has produced since July 1, 2005. Requesting more than five years of all materials distributed to the public about campaigns and service is unreasonable and burdensome, particularly on a non-party. The request would require a time-consuming and expensive effort for documents that are ultimately not relevant to whether or not the University of Wisconsin improperly defunded CFACT.  CFACT, again, is attempting to require WISPIRG to produce documents that are a waste of time.

**IV. The Time Period of the Documents Requested is Not Reasonably Limited to Relevant Events and Circumstances.**

12

In its subpoena, CFACT requests documents spanning large periods of time, often more than five years. CFACT has not produced a reasonable explanation of why it requested such vast sets of documents.  By failing to tailor its request with reasonable temporal limits, CFACT only strengthens WISPIRG's assertion that it is engaging in a "fishing expedition" against a long-time adversary.

Requests 1 through 4 all seek to compel production of documents from July 1, 2005 to the present day. That date – July 1, 2005 – does not correlate to any specific action taken by WISPIRG.  Indeed, it was not until the academic year 2008-2009 that CFACT's application for funding was denied by the University; in prior years, CFACT had received funding. Even if we assume for the sake of argument that the materials requested by CFACT are relevant, not burdensome, and not duplicative, there is no good reason why WISPIRG should be expected to produce communications, Board documents, and campaign materials produced over 5 years ago.

In their Motion to Compel, CFACT argues that documents from these prior years are a reasonable request because CFACT and WISPIRG both received some form of funding during those years and "it will allow the parties and the court to compare the activities of CFACT and WISPIRG during those years, and then compare those years to the 2008 and 2009 eligibility applications" to determine if the organizations changed any activities that would affect their eligibility.  CFACT contends that if the organizations did not alter their activities, then this would demonstrate "implicit viewpoint discrimination."  The documents requested from WISPIRG are not necessary for CFACT to establish this point.  If CFACT is contending that the University denied its funding application based on ideology rather than on changed activities, then the only activities that are relevant are CFACT's past activities.  Assuming that CFACT's logic holds, if CFACT can show that it did not change its activities substantially between 2005

13

and 2008, but was suddenly denied funding in 2008, then CFACT may be able to prove its case. That is CFACT's burden to establish, not WISPIRG's, and it can do so without five years of WISPIRG's internal communication, campaign materials, strategies, board minutes and more. WISPIRG, a small nonprofit organization and a non-party, should not be required to produce documents where they are wholly unnecessary to prove CFACT's claims.

## CONCLUSION

For the foregoing reasons, WISPIRG respectfully requests this Court to deny CFACT's Motion to Compel Production of Documents.


Respectfully submitted this 17th day of December, 2010,

/s/ Chantell Taylor
Chantell Taylor, Esq.
General Counsel for nonparty WISPIRG
The Public Interest Network
1536 Wynkoop St., Ste. 100
Denver, CO 80202
Telephone: (303) 573-5885
Fax: (206) 309-7010
Email: ctaylor@publicinterestnetwork.org